IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FREDDIE B. WALKER, ) | |
| AIS #159866, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:14-CV-581-WKW |
| ) | [WO] |
| ) | |
| TAHIR SIDDIQ, et al., ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Freddie B. Walker ("Walker"), a state inmate, in which he challenges the adequacy of medical treatment provided to him at the Bullock Correctional Facility during 2013 for right-eye pain. Walker names as defendants Tahir Siddiq, a physician employed at Bullock, Corizon, Inc., the contract medical care provider for the state prison system; Kenneth Jones, the warden of Bullock at the time his claim arose; and Kim Thomas, the former commissioner of the Alabama Department of Corrections.[1] Walker seeks declaratory and injunctive relief

---

[1] Walker appears to present claims against the defendants in both their individual and official capacities. "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, with respect to Walker's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn would be the appropriate defendant. As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant. *Walton ex rel. R.W. v. Montgomery Cnty. Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (allowing new official to be substituted for purposes of official capacity claim but not for individual capacity claim).

1

for the alleged violations of his constitutional rights.

The defendants filed special reports and relevant evidentiary materials in support of their reports, including affidavits and certified copies of Walker's medical records. In these filings, the defendants deny they acted with deliberate indifference to Walker's medical needs.

After receipt of the defendants' special reports, the court issued an order directing Walker to file a response to the reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 23 at 2.[2] The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 23 at 2–3. Walker filed a response to this order on September 8, 2014. Doc. 26.

Pursuant to the directives of the above-described order, the court deems it appropriate to treat the defendants' reports as motions for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

---

[2] All documents and attendant page numbers cited herein are those assigned by this court in the docketing process.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). This court will also consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape

the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Walker has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. DISCUSSION

Walker complains that in August and September of 2013 Dr. Siddiq acted with deliberate indifference to his complaints of right-eye pain.[3] Specifically, Walker alleges that Dr. Siddiq failed to provide appropriate treatment for his right eye, Doc. 1 at 2–3, and refused his request for referral to a free-world specialist. Doc. 1-1 at 2. Walker further maintains that he informed Commissioner Thomas and Warden Jones of the alleged lack of adequate medical treatment but these defendants failed to intervene on his behalf. Doc. 1-1 at 2.

The defendants adamantly deny that they acted with deliberate indifference to

---

[3] The court limits its review to the specific allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y, Fla. Dept. of Corrs.*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend her complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment stage because the plaintiff had not properly amended the complaint).

Walker's medical needs. Instead, the defendants maintain that Walker received medical treatment for the pain in his right eye, including an evaluation by medical professionals, consultations with an Optometrist, and a computerized tomography ("CT") scan of the impacted area. Doc. 21-1 at 3–6, 10, 12–14 & 17.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

At least within the Eleventh Circuit, medical malpractice does not equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at

6

> 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). A medical need is serious if it "'has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things[:] 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent,

8

> inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (holding that, to show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law"). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotations omitted); *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Ore.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison

medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

**A.     The Correctional Defendants—Commissioner Thomas and Warden Jones**

Commissioner Thomas submitted an affidavit in his defense, which states in relevant part:

> The Alabama Department of Corrections contracts with Corizon, LLC to provide health care services to inmates incarcerated at Alabama state correctional facilities including the Bullock Correctional Facility. All of the individuals who provide medical care to inmates incarcerated at the Bullock Correctional Facility were at all relevant times employees of Corizon, LLC.
> At no time have I ever been involved in any medical treatment or medical care requested by or provided to Mr. Walker at the Bullock Correctional Facility. I have taken no part in any decisions related to any health care issues involving Mr. Walker.
> All medical decisions related to necessary medical care are and were made by employees of Corizon. All medical decisions related to medical care pertaining to Mr. Walker would have been made by employees of Corizon and not by me or any other employees of the Alabama Department of Corrections. I have no contact whatsoever with any Corizon employee regarding the medical status and/or medical treatment requested by or provided to Mr. Walker during his incarceration at the Bullock Correctional Facility.
> I have no medical training and have never been to medical school or nursing school. I have no medical training whatsoever and at all relevant times deferred to employees of Corizon with regard to treatment and medical care provided to inmates at the Bullock Correctional Facility including Mr. Walker.

Doc. 20-1 at 3. Warden Jones likewise avers that he has no medical training and that "[a]ll medical decisions related to medical care pertaining to Mr. Walker would have been made by employees of Corizon and not by me. . . . I have no contact whatsoever with any Corizon employee regarding the medical status and/or medical treatment requested by or provided to Mr. Walker during his incarceration . . . ." Doc. 20-2 at 3.

In the face of this evidentiary showing, Walker has failed to establish deliberate indifference on the part of defendants Thomas and Jones. Specifically, Walker has not demonstrated that either defendant was aware of facts establishing "an objectively serious medical need" for additional treatment, nor that they disregarded any known serious risk to Walker's health. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Farmer*, 511 U.S. at 838 (holding that failure to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference).

Insofar as Walker seeks to hold Thomas and Jones liable for the treatment he received from Corizon's medical professionals, he is likewise entitled to no relief because

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. Moreover, supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) (citations and internal quotations omitted). For these reasons, defendants Thomas and Jones are entitled to summary judgment.

**B.    The Medical Defendants—Dr. Siddiq and Corizon, Inc.**

Dr. Siddiq addresses Walker's allegation of deliberate indifference, in pertinent part,

as follows:

> I have reviewed and am familiar with the medical file of Mr. Walker. I am also familiar with the medical care and attention that Mr. Walker has received while incarcerated with the ADOC at the Bullock County Correctional Facility.
> I have personally seen and treated Mr. Walker for his medical needs at the health care unit at the Bullock County Correctional Facility.
> I have reviewed the Complaint that Mr. Walker has filed against me, and I am familiar with Mr. Walker's allegations.
> I am aware that Mr. Walker alleges that on or about August 29, 2013, he was seen by an Optometrist who ordered a CAT scan. I am aware that Mr. Walker alleges that no treatment has been provided to him regarding his eyes.
> Attached hereto are the relevant medical records pertaining to the medical care and attention that Mr. Walker has received regarding his complaints of eye pain.
> The medical records reveal that Mr. Walker first complained of having problems with his vision on July 30, 2013.
> Thereafter, Mr. Walker was seen at the health care unit where he complained to the nurses of being unable to focus his left eye. He also complained of pain in his right eye. Thereafter, an appointment was made for Mr. Walker to be seen by an Optometrist.
> Mr. Walker was in fact seen by an Optometrist on August 21, 2013. The Optometrist's initial diagnosis was that of extropia and relative exophthalmos. Extropia is a form of strabismus which causes the eye to drift outward. Exophthalmos, also called proptosis, is abnormal protrusion of one or both of the eyeballs. The proptosis arises from inflammation, cellular proliferation, and accumulation of fluid in the tissues that surround the eyeball in its socket, or orbit. The Optometrist, therefore, requested that Mr. Walker receive[] an orbital CT.
> Eye glasses for Mr. Walker were ordered from Institutional Eye Care on August 22, 2013.
> The CT scan of the orbits was approved on August 22, 2013, and was in fact performed on August 23, 2013 [at Bullock County Hospital] and read by the radiologist as follows:
>
>> History: Orbital mass.
>> Unenhanced CT of the maxillofacial bones:
>> Unenhanced axial images are obtained. At the computer work station, coronal and sagittal reformatted images are performed. . . . There is no designation in the clinical history of whether

the orbital mass is right or left sided. No marker was placed on the site of concern by the CT technologist.

Given the historical limitations as just stated and absence of intravenous contrast, no clear acute process is demonstrated. There appears to be some asymmetric soft tissue thickening over the right frontal bone compared to the left as best appreciated on axial images 21 through 32. There is more soft tissue density in the subcutaneous fact on this side, and there is some anterior bulging of the skin. Correlation with the site of concern clinically is needed. Both globes appear symmetric. The extraconal, conal and intraconal compartments of both orbits appear symmetric. Optic nerves appear symmetric. The right globe is oriented rightward and distorts its orientation somewhat compared to the left. There is pansinusitis. The mandible is intact and condyles anatomically located. Zygomatic arches are intact. The hard palate pterygoid plates and nasal bones are intact. There is no evidence for foreign body.

Impression:
1. Soft tissue prominence right supraorbital segment as discussed above.
2. Rightward oriented globe.
3. Pansinusitis.

Pansinusitis is inflammation of all the sinuses on one or both sides of the nose.

The CT results were forwarded to the Optometrist who thereafter responded by stating that the condition experienced by Mr. Walker was not an ophthalmologic problem. The Optometrist set forth on his medical chart on September 18, 2013 that there was no reason for any follow-up for Mr. Walker to be seen by the Optometrist.

Mr. Walker was prescribed Prednisone to treat his sinus infection.

The Optometrist ordered and reviewed the CT scan taken of Mr. Walker. Thereafter, the Optometrist ruled out any ocular problems. The results from the CT scan determined that no surgical intervention was necessary with regard to the eye issues complained of by Mr. Walker.

Mr. Walker has been seen by outside specialists, and a CT scan of the maxillofacial bones was taken.

Mr. Walker has received medications for his sinus problems.

At no times have Mr. Walker's medical needs ever been denied and/or delayed.

When Mr. Walker initially complained of eye pain, he was

> immediately seen, evaluated, and an outside consult [with an Optometrist] was immediately ordered. Thereafter, a CT scan was ordered and the results were forwarded to the Optometrist.[4]
> Mr. Walker's medical needs have always been treated.
> Mr. Walker has been closely monitored by myself and the other medical care providers at the Bullock County Correctional Facility. . . . Mr. Walker has been seen and treated every time that he presented himself to the health care unit at the Bullock County Correctional Facility.

Doc. 21-1 at 3–6.[5] In the medical record for June 26, 2014, Dr. Siddiq observed that Walker has a "slight Nystagmus to Rt. sided eye. Vision 70/20–70/20. No ocular problem noted. CT scan [indicated] some extraocular soft tissue swelling. No mass." Doc. 21-1 at 20.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Dr. Siddiq did not violate Walker's constitutional rights. Specifically, there is no evidence upon which the court could conclude that Dr. Siddiq acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the court demonstrates that Dr. Siddiq examined Walker for his complaints of right-eye pain, referred him to an Optometrist for further evaluation, ordered a CT scan as requested by the Optometrist and prescribed medication to alleviate Walker's pain. Doc. 21-1 at 8–20. Whether Dr. Siddiq "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth

---

[4] After reviewing the results, the Optometrist advised Dr. Siddiq on September 18, 2013, "This is not an ophthalmologic problem." Doc. 21-1 at 16.
[5] The affidavit submitted by Dr. Siddiq is corroborated by the objective medical records contemporaneously compiled during the treatment process.

Amendment." *Adams*, 61 F.3d at 1545 (citation omitted). In addition, Walker's allegation that Dr. Siddiq did not diligently pursue alternative means of treating his condition does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1505 (holding that inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

As a result, the court concludes that the alleged lack of treatment did not constitute deliberate indifference. Walker's self-serving statements of a lack of due care and deliberate indifference do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x at 403 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). In addition, Walker has failed to present any evidence showing that the manner in which Dr. Siddiq addressed his condition created a substantial risk to his health that Dr. Siddiq consciously disregarded. The record is therefore devoid of evidence—significantly probative or otherwise—showing that Dr. Siddiq or any other health care provider acted with deliberate indifference to a serious medical need

experienced by Walker. Consequently, summary judgment is due to be granted in favor of defendants Siddiq and Corizon, Inc.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further ORDERED that on or before **March 1, 2017** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 15th day of February, 2017.

                                            /s/ Gray M. Borden
                              UNITED STATES MAGISTRATE JUDGE